SOWARD v. THE CHICAGO & N. W. R. R. Co.

Railroad: LIABILITY FOR STOCK KILLED. A railroad company is not liable, under chapter, 169 Laws of 1862, for stock killed at the crossing of a road, used and traveled by the public as a highway, though the route thus traveled was in fact outside of the survey or line of the highway, as established by the county authorities.

*Appeal from Boone District Court.*

SATURDAY, FEBRUARY 24.

ACTION to recover for stock, a mare and mule, killed by the defendant's train. The plaintiff in his petition alleged that the stock was killed on the unfenced track of the defendant's railroad, where it had the right to fence; that such killing was without the fault of plaintiff; that he had served notice and affidavit of said loss, etc., upon defendant, who had neglected to pay as required by statute, and plaintiff was entitled to recover double damages, in the sum of $500. The defendant, by answer, denied the allegations of the petition, and for further answer averred that the stock was injured upon a public highway, where the defendant had no right to fence, and without negligence by defendant. The cause was tried to a jury, who found a verdict for the plaintiff for the full amount claimed, $500. It had been once before tried with like result, and, on appeal to this court, the judgment was reversed. The case is reported in 30 Iowa, 550. The district court having rendered judgment upon the second verdict, the defendant again appeals. The further necessary facts are stated in the opinion.

*Henderson & Merriman* for the appellant.

*Hull & Ramsey* for the appellee.

COLE, J. — The evidence tends to show that a public highway was laid along the line between sections 33 and 34 in township 84, range 27 west, about the year 1855; that the defendant's railway was constructed there in 1866; that prior to its construction the country was open prairie, and the travel at certain seasons of the year, and when the ground was wet, was from one hundred and fifty to two

hundred and fifty yards west of the line of the highway
where the railroad crossed it; that the defendant made a
highway crossing, with proper cattle guards, save that they
were ninety-three feet apart, at this point or line of travel,
and fenced the balance of its railroad; that there was no
other highway crossing for a distance of seven miles — two
miles east, and five west; that the public had used the
highway and crossing for a little over two years before the
injury sued for in this action, which occurred August 31,
1868, at that crossing; but at that time, the land was
fenced up on the north side of the railway, and was still
open prairie on the south.   No negligence by the defend-
ant's agents, in connection with the injury, is shown or
claimed.

The defendant, among others, asked the court to give
the following instruction: " If the jury find that for three
or more years before the injury complained of, the crossing
was used by the public generally as a public highway,
then it is a public highway, in contemplation of law,
and defendant had no right to fence the same." The
court refused to give this, and the other instructions
asked by defendant, and which were grounded upon the
same theory, and gave the following, and others, resting
upon the same general view, to wit: "If you find from
the evidence that the crossing of the public highway was
at a point different from the crossing established by the
defendant, and that it had closed up the regularly laid
highway, and had knowledge of the true place of crossing,
then defendant is liable, and your verdict should be for
plaintiff."

The case was thus made to depend upon the question
whether railroad companies are, in this State and under
our statute, required to fence their roads at all places except
the crossing of legally laid highways — that is, highways
de jure ; or whether they are excused from fencing across
the highways de facto.   The district court held the former,

and, in our view, committed an error in so doing. We state briefly some of our reasons for this view.

If railroad companies are required to fence their railways across all highways that are not legally laid, they would fence across very many of our public roads which are now extensively traveled and are supposed to have been legally laid, but are not. This is abundantly established by reference to our own reports, which show many cases wherein public and well-traveled roads have been held not legally laid. See *The State* v. *Kimball,* 23 Iowa, 531, and the road cases therein referred to. It will be remembered that by act of our legislature (Rev., § 327), certain powers connected with establishing roads were given to the clerk of the district court. Many roads were laid under that statute, which was afterward held to be invalid, and, as a necessary consequence, those highways were not legally laid. *The State* v. *Kimball, supra.* And yet most of those highways continue to be used by the public. Shall we now so construe the statute requiring railroad companies to fence their roads, as to compel them to fence across these highways thus laid, which are not highways *de jure,* but only highways *de facto?* The statement of the question begets its own negation.

And as a good illustration of the fact we are considering, it may be stated that, in this case, the plaintiff undertook to prove by the records of the county court that the highway, as claimed by him along the section line, was legally laid; but there are such manifest defects in the proceedings, as shown by this abstract, as might compel us to hold that it was not a highway *de jure,* and under the plaintiff's theory the railroad company would be required to fence across it.

But further than this, the public acquires valuable rights of highway by prescription, or continued use for more than ten years. Suppose a railway company should be constructing its line of road across a public traveled way,

which has thus been used for nine years and six or more months, but not the full time requisite to perfect the public right and make it a highway *de jure*, to require such company to fence its road across such public traveled way, would be requiring it to defeat the right which the public might otherwise acquire.

And, on the other hand, suppose such railroad company should refuse or neglect to construct suitable and proper crossings and approaches at such public traveled highway, it occurs to us that it would not constitute a sufficient defense for the railroad company, when prosecuted for such refusal or neglect, to show that the highway was not legally established, or had not been used by the public for a sufficient length of time to constitute it a highway by prescription.

In other words, the same rule respecting public rights, *de jure* and *de facto*, must obtain in suits between railroad companies, and other corporations and persons, as ordinarily obtains between individuals. That is, that when a claim is grounded or a defense is rested upon an incident growing out of a public right or franchise, it is sufficient to show such right or franchise *de facto*. This rule has frequent illustrations in the reports of cases involving the acts of public officers *de facto*. See *The People* v. *Cook*, 8 N. Y. 67, and cases there cited. Of course the rule is different when the direct question is as to the lawful authority to exercise the right or franchise in controversy. And, of course, there must be such *user* of the road in question as to constitute it a road *de facto*.

It follows, that the court also erred in admitting the evidence tending to show that a public highway was laid along the section line; for, whether it was or not, was wholly immaterial. So, also, was there error in admitting parol evidence of the contents of a written notice, without first accounting for the absence of the writing itself.

Reversed.